UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

```
* * * * * * * * * * * * * * * * * * * * * * * *
EUGENE SCALIA, Secretary of Labor,        *
United States Department of Labor,         *
                                           *
                Plaintiff,                 *
                                           *          CIVIL ACTION NO.
        v.                                 *
                                           *
MAINE OXY-ACETYLENE SUPPLY                 *
COMPANY, DANIEL GUERIN,                    *
BRYAN GENTRY, AND CARL PAINE,              *
                                           *
                Defendants.                *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## COMPLAINT

Plaintiff, Eugene Scalia, Secretary of Labor, United States Department of Labor (the "Secretary"), alleges:

1.  This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), 29 U.S.C. §§ 1001 *et seq.*, as amended, and is brought by the Secretary to enjoin acts and practices which violate the provisions of Title I of ERISA and to obtain appropriate relief in order to redress violations and enforce the provisions of that Title pursuant to ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5).

2.  The ERISA violations alleged herein arise from a scheme by fiduciaries of the Maine Oxy-Acetylene Supply Company Employee Stock Ownership Plan ("ESOP" or "Plan") to pay less than fair market value for shares owned by Plan participants to benefit themselves. Defendants Maine Oxy-Acetylene Supply Company ("Maine Oxy" or "Company"), Daniel Guerin ("Guerin"), President and CEO of Maine Oxy, and Director

Bryan Gentry ("Gentry"), concealed the price Guerin and the JWK 2012 Trust ("Gentry Trust"),[1] paid for a 51% majority interest in Maine Oxy just months before ("the Private Sale"). Guerin and the Gentry Trust paid $654.62 a share for 25,500 shares of the Company. Guerin and the Company caused this material information to be withheld from the ESOP Trustee, Carl Paine ("Paine"). Guerin and Maine Oxy required valuation firm Atlantic Management Company ("AMC") to sign a Non-Disclosure Agreement pursuant to which it could not disclose information about the price paid in the Private Sale, or even the fact of Guerin's and the Gentry Trust's ownership interest in the Company, to the ESOP Trustee when it performed its annual valuation of the Company for the ESOP. Paine failed in his fiduciary duties as ESOP Trustee, including by not investigating the impact of the Private Sale upon share value. The ESOP participants were not informed of the price paid in the Private Sale. As a result, Guerin, Gentry, as a Director on the Company Board, and Maine Oxy caused the ESOP participants to receive a fraction of the value that Guerin and Gentry knew the shares were worth.

3.    The ERISA violations alleged herein also arise from Defendant Paine's failure to protect the ESOP's interests in connection with the ESOP's sale of the remaining 49% ownership interest ("2013 Stock Repurchase") in Maine Oxy to the Company. Relying on a flawed valuation of the stock, and without prudently investigating the merits of the transaction, Paine, with the aid and knowledge of Guerin Gentry, and Maine Oxy, caused the ESOP to sell its shares back to the company for less

---

[1] The Gentry Trust is a grantor trust formed under the law of the Commonwealth of Pennsylvania. Pursuant to a grantor trust, the grantor retains control over the assets of the trust. The Trustees of the Gentry Trust are Sonja Leigh Gentry and Kirk Edward Gentry and the Beneficiaries are members of Gentry's family. Gentry was named in the Stock Purchase Agreement as having personally guaranteed promissory notes issued by the Gentry Trust and Guerin to the former owners, Bruce and Joseph Albiston. Gentry became a member of the Maine Oxy Board of Directors in 2012.

than fair market value. As a result, Paine, Maine Oxy, Guerin, and Gentry violated ERISA's prohibited transaction, self-dealing and fiduciary duties provisions.

## JURISDICTION AND VENUE

4.   The Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

5.   Venue with respect to this action lies in the District of Maine pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132 (e)(2), where the Plan was administered, where the breaches alleged herein took place, and where certain of the Defendants reside.

## THE PLAN

6.   In 2004, Maine Oxy established and sponsored the ESOP. The purpose of the ESOP was to enable Eligible Employees of Maine Oxy to share in the growth and profits of Maine Oxy and to enable them to save and invest in accordance with the Plan. The ESOP was administered in Auburn, Maine, where Maine Oxy is headquartered. The ESOP was a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2) and was subject to coverage under the Act pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a). The ESOP was terminated in 2013.

## THE PARTIES

7.   Maine Oxy is a Maine corporation located at 100 Washington Street North, Auburn, Maine 04210. Maine Oxy is a leading distributor of industrial, medical and specialty gases, as well as welding and cutting equipment, supplies and accessories throughout New England. At all relevant times, pursuant to the ESOP's governing Plan Document ("Plan Document"), Maine Oxy was the Plan Administrator and Plan Sponsor within the meaning of ERISA §§ 3(16)(A) & (B), 29 U.S.C. §§ 1002(16)(A) & (B). According to the Plan Document, the Administrator had the

"discretionary authority to interpret the provisions of the Plan and to determine all questions relating to eligibility for benefits." The Plan Document also provides that as Plan Administrator, Maine Oxy "shall appoint a committee, to be known as the ESOP Committee, to perform its duties and exercise its powers as Administrator." Maine Oxy appointed an ESOP Committee, but pursuant to the Plan remained Plan Administrator. Maine Oxy, through its board of directors (the "Board of Directors"), had the authority to and did appoint Paine as Trustee, and had the authority to remove Paine. For these reasons, Maine Oxy exercised discretionary authority or discretionary control respecting management of the ESOP, exercised authority or control respecting management or disposition of the ESOP's assets, and had discretionary authority or discretionary responsibility in the administration of the ESOP, rendering it a fiduciary of the ESOP pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21). Maine Oxy was a party in interest with respect to the ESOP pursuant to ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C), based on its status as a fiduciary and employer.

8.     At all relevant times, Paine was the Trustee of the ESOP, a member of the ESOP Committee, and a member of the Maine Oxy Board of Directors. In those capacities, Paine exercised discretionary authority or discretionary control respecting management of the ESOP, exercised authority or control respecting management or disposition of the ESOP's assets, and had discretionary authority or discretionary responsibility in the administration of the ESOP, rendering him a fiduciary of the ESOP pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21). Under the terms of the Trust Agreement, Section 2.4, Paine was to act solely in the interest of the ESOP's participants and beneficiaries; for the exclusive purpose of providing benefits to participants and their

4

beneficiaries; with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use, and in accordance with the documents and instruments governing the ESOP to the extent they are consistent with ERISA. Paine was a party in interest to the ESOP pursuant to ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and (H), based on his status as a fiduciary and as a director of Maine Oxy.

9.   At all relevant times, Guerin was Maine Oxy's President and Chief Executive Officer and one of its Directors on the Board. Guerin and the Gentry Trust purchased 51% of the Company from Bruce and Joseph Albiston in the Private Sale, which occurred on September 28, 2012. The Company subsequently purchased the remaining 49% of Maine Oxy stock held by the ESOP in the 2013 Stock Repurchase. Guerin caused the ESOP to be terminated on or about November 1, 2013. Guerin, as a Director, had appointed Paine as Trustee on March 30, 2012, and had the authority to remove Paine. As a Director involved in appointing Paine as Trustee, and in selecting the ESOP Committee members, Guerin had the fiduciary duty to monitor Paine's performance of his fiduciary obligations in connection with the 2013 Stock Repurchase and the 2012 Valuation on which it relied. Additionally, as a Director with control over the Company, Guerin acted as Plan Administrator with discretionary responsibility and authority to control and manage the operation and administration of the Plan. For these reasons, Guerin exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and had discretionary authority or discretionary responsibility in the administration of the Plan, rendering him a fiduciary of the ESOP pursuant to ERISA § 3(21), 29 U.S.C. §

5

1002(21).  Guerin  was a party in interest to the ESOP pursuant to ERISA § 3(14)(A) and (H), 29 U.S.C. §§ 1002(14)(A)  and (H), based on his status as a fiduciary,  owner, officer, director and shareholder of Maine Oxy.

10.   At all relevant times, Gentry was one of the Company's  Board members with a history  of being an established  executive in the commercial gas industry.  Gentry, as a Director on the Board and "Advisor"  to the Company, had the fiduciary  duty to appoint and monitor  the Trustee, in the performance of the Trustee's fiduciary  duties  in connection  with the 2013 Stock Repurchase and the 2012 Valuation  on which it relied. For this reason, Gentry exercised discretionary  authority  or control respecting management  or disposition  of Plan assets, or exercised discretionary  authority  or responsibility  in the administration  of the ESOP, rendering him a fiduciary  to the ESOP pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21).  Gentry was a party in interest to the ESOP pursuant  to ERISA § 3(14)(A) and (H), 29 U.S.C. §§ 1002(14)(A)  and (H), based on his status as a fiduciary,  owner, director, Advisor and shareholder of Maine Oxy.

## FACTUAL ALLEGATIONS

### CHRONOLOGY OF EVENTS

11.   Maine Oxy established an Employee  Stock Ownership Plan in 2004.

12.   During the period 2010 through  2012, Maine Oxy expanded through purchases of welding  supply and industrial  gas companies in the Northeast United States and Canada. In 2012,  Maine Oxy's Special Projects Manager found that several of the Company's pricing  contracts with vendors had not been updated in years, despite rising costs associated with inflation.  In 2012,  Maine Oxy rolled  out a Company-wide  revised

contract management program, resulting in an estimated increase in Company revenues by $6 to $8 million per annum. In 2012-2013 Maine Oxy also implemented a revised inventory management system to ensure their sales margins were accurate and growing.

13.   Effective March 30, 2012, Maine Oxy Directors Bruce Albiston, Ernest Glynn, and Guerin appointed Maine Oxy employee Paine as the ESOP Trustee, replacing Ernest Glynn. Paine was a corporate manager who was promoted shortly thereafter to run Maine Oxy's Canadian operations.

14.   In late March 2012, Bruce Albiston contacted AMC to discuss an offer from Guerin and Gentry to purchase his controlling shares in the Company.

15.   In early April 2012, Bruce Albiston contacted AMC to advise he had met with Guerin and Gentry and had discussed the possibility of Guerin and Gentry purchasing 51% of the Company's shares. These discussions included valuing the Company at $39 million.

16.   In May 2012, the Company received an expression of interest from a private buyer, looking to purchase Maine Oxy for $45 million.

17.   In June 2012, Guerin advised AMC that he and Gentry anticipated paying the Albistons approximately $17 million for their 51% of Maine Oxy stock. The parties arrived at this price based on an industry practice that the Company had previously employed by multiplying the Company's annual net sales of approximately $32 million, by a multiplier of one. Guerin indicated to AMC that he and Gentry anticipated growing the Company to $50 million in sales in five years. On June 29, 2012, Gentry and Guerin signed a detailed term sheet as buyers with Bruce and Joe Albiston listed as sellers. Over the next several weeks a due diligence period ensued.

18.   On or around September 28, 2012, Guerin and the Gentry Trust purchased the Albiston's 51% ownership interest, or the combined 25,500 shares of Maine Oxy, for $16,692,900, or $654.62 per share. Guerin and the Gentry Trust financed the Private Sale through a combination of approximately $6,965,950 in cash and $10,097,950, plus interest, in promissory notes to the Albistons.

19.   In 2012, Gentry and Paine were appointed to the Maine Oxy Board of Directors, joining President/CEO Guerin, Martin Eisenstein, Esq., CFO Michael Mooney, and Advisor Pat Heffernan.

20.   In late 2012, Maine Oxy and Guerin consulted with Attorney Rob Edwards of Steiker, Fischer, Edwards & Greenapple, P.C., a firm that provides ESOP services. An invoice from the firm references a February 21, 2013 call to set up a meeting with Maine Oxy regarding its ESOP sustainability and termination options.

21.   On or about February 19, 2013, AMC contacted Paine to schedule the annual valuation for the ESOP for the 2012 Plan Year. AMC's John Murphy held a "kickoff meeting" with Paine to begin the annual review process on March 14, 2013. On the same day as the meeting, John Murphy emailed Guerin to obtain information about the Private Sale. John Murphy noted in the email that such information, although sensitive, was "critical to the valuation" of the Company, and for support John Murphy cited IRS Revenue Ruling 59-60.

22.   By letter dated March 22, 2013, Maine Oxy required valuation firm AMC, in connection with its agreement to provide valuation services to the ESOP, to sign a Non-Disclosure Agreement ("NDA"), stating that it would not disclose information relating to the terms of the Private Sale and the ownership of the Company, to the ESOP Trustee.

The ESOP was AMC's client and the Trustee was the person tasked with ensuring the 2012 Valuation reflected fair market value of the shares. AMC signed the NDA. In the several years prior that AMC had provided valuation services to the ESOP, it had never signed an NDA.

23.    Over the next several weeks, AMC prepared its valuation of Maine Oxy. AMC valued the Company using two methodologies: the Net Asset Value ("NAV") and the Capitalized Returns ("CR") Methodologies. The NAV methodology restates the Company's balance sheet value of assets and liabilities to fair market value, subtracting liabilities from assets to obtain a Company value. The NAV approach, as AMC's 2012 Valuation Report stated, is appropriate where (1) a company is not expected to continue operating as a going concern, (2) a company has either no established earnings history, or a volatile earnings/cash flow history, (3) there is no consistent predictable customer base, and (4) there is little or no value added to the company's products or services from labor. These criteria did not apply to Maine Oxy. According to the 2012 Valuation Report, AMC used the CR Methodology because Maine Oxy management did not provide AMC with a long term forecast of revenues and profits, even though the CR Methodology anticipates a steady state of low-to-no growth, which was not consistent with management's outlook. The two methodologies produced vastly different results: the NAV method produced a result of $15.2 million and the CR method produced a result of $2.5 million. AMC did not provide further explanation or reconciliation of the two divergent results. Additionally, AMC weighted the values arbitrarily at 50%, without explaining why it applied the 50% weighting.

24. On or about April 25, 2013, AMC sent a draft valuation report to ESOP Trustee Paine and Company Chief Financial Officer, Director and former Plan Trustee Michael Mooney. The valuation set the Maine Oxy ESOP share price at $134.92. On May 1, 2013, AMC sent a final valuation report to Maine Oxy CFO Michael Mooney, but not ESOP Trustee Paine. The share value in the final valuation report, seven months after Guerin and Gentry had paid $654.62 per share for the expanding Company's stock, remained at $134.92. AMC's valuation report asserted that the 49% of the Company, or 24,500 shares that the ESOP held should be valued at $3,305,540, which was approximately 20% of the share price paid in the Private Sale seven months earlier. AMC referenced the Private Sale in its report, but did not state the price paid, consistent with the NDA, and dismissed it as not relevant to the ESOP's valuation. Had the share price from the Private Sale been considered and the appropriate valuation methodologies used, the share values would have been significantly higher, resulting in millions of dollars more for the ESOP.

25. On or about May 23, 2013, Attorney Rob Edwards, Gentry and Guerin discussed an "ESOP exit plan." In June 2013, Maine Oxy began working with SES Advisors ("SES"), an affiliate of the Steiker firm, to assist with the termination of the ESOP. Guerin advised SES on June 22, 2013, that he wanted a requirement of the ESOP Termination to be that all ESOP participants sell back their Company stock. On August 7, 2013, the Company was provided a "Comfort Letter" from the ESOP Trustee that no third party had a right to Company shares.

26. On or about August 9, 2013, ESOP participants received letters with Special Diversification Election forms, stating they had the option to sell or hold their ESOP

shares, and urging them to "carefully evaluate" whether their funds were better invested in Company stock or alternative investments. Guerin also emailed ESOP participants on August 14, 2013, to tell them that they had an "option" to sell shares back, while he was in the process of discussing plan termination with his advisors and the elimination of the right of the participants to hold onto their stock.

27.   At the same time as he was mailing letters stating that the participants could hold onto their stock and continue to participate in the growth of the Company, Guerin engaged in an aggressive campaign to pressure individual ESOP participants to sell their shares. Guerin's tactics included personal meetings with employees and threats of possible adverse employment actions.

28.   On or about October 16, 2013, the Maine Oxy Board voted and Guerin signed an amendment terminating the Plan effective November 1, 2013. The amendment provides in relevant part that upon termination of the Plan, "S" corporation distributions received in 2013, net of expenses, paid from the ESOP Trust Fund, would be allocated to participants' accounts and all remaining undistributed account balances would be distributed in a lump sum to the participant or beneficiary entitled thereto as soon as practicable. The option for ESOP participants to keep their ESOP shares no longer existed.

29.   At the time of the ESOP termination, there was no separate valuation conducted, and the final repurchase of ESOP shares was based on the share value of $134.92 set out in the 2012 Valuation. Upon ESOP termination, the ESOP was paid $3,305,540 for its 49% interest in the Company, or approximately 20% of what Guerin and Gentry had paid to purchase their 51% interest in the Company just months prior.

The Company financed the 2013 Stock Repurchase, or purchase of the ESOP's 49% interest in the Company, through a bank loan.

30.   All ESOP assets were distributed by the end of December 2013 and Guerin and the Gentry Trust took full ownership and control of the Company.

31.   On December 9, 2013, the Maine Business Journal reported that Maine Oxy had grown rapidly since the end of the 2008 recession. Paine was quoted as having stated the company is "very profitable" with increasing revenues from approximately $38 million to an expected $40 million from 2013 to 2014.[2]

<u>FAILURE TO OBTAIN ADEQUATE<br>CONSIDERATION FOR THE ESOP SHARES</u>

32.   In light of the NDA described above, the Trustee did not have sufficient information about the Private Sale to inform his review of the 2012 Valuation. Without knowing the price paid for shares in the Private Sale just months before, the Trustee could not determine whether the 2012 Valuation reflected the fair market value of the ESOP shares.

33.   Maine Oxy and Guerin deliberately withheld information from Paine by requiring AMC to sign the NDA. Maine Oxy, Guerin and Gentry, as fiduciaries to the ESOP, had a duty to provide the Trustee with necessary information to inform the process of determining fair market value of the ESOP's shares. Instead, they concealed the terms of the Private Sale and Gentry's ownership role in the Company. Gentry did not reveal his ownership role, but remained a "Silent Partner" and did not disclose any information regarding the Private Sale.

---

[2]Lori Valigra. "Maine Oxy Expands Its Gas Business Into New Markets." Maine Business Journal. December 9, 2013.

34.     A review of the 2012 Valuation should have raised red flags, causing Paine to question its conclusions. AMC valued the Company using two methodologies that do not appear to be useful methodologies to determine fair market value, based on the criteria laid out in its own 2012 Valuation Report.

35.   While the decision to terminate the ESOP was a settlor function, Trustee Paine should have carried out his fiduciary duties to ensure the Plan was properly terminated and the shares were repurchased at fair market value.

36.   As ESOP Trustee, Paine had a duty to act solely in the interest of the ESOP's participants and beneficiaries for the exclusive purpose of providing benefits to the ESOP's participants and beneficiaries, to act with the care, skill, prudence, and diligence consistent with someone familiar with such matters, and in accordance with the instruments and documents governing the Plan to the extent they are consistent with ERISA.[3] Further, Paine was required to ensure that the ESOP's shares were valued at fair market value[4] and he was required to act in good faith to the extent he relied on any specialists.[5] Paine's reliance on AMC's valuation was not reasonably justified under the circumstances at the time of the termination.

37. Maine Oxy, Guerin and Gentry knew or should have known that the ESOP did not obtain adequate consideration for the sale of its 49% interest in the Company in light of Guerin and Gentry's purchase of the remaining 51% of the Company. Maine Oxy, Guerin and Gentry knew or should have known that their co-fiduciary Paine was ignorant of the bases supporting the Private Sale and the ultimate price paid for 51% of the

---

[3] The Plan Document, Sections 5.7, 13.3 and 15.1, and Trust Agreement, Section 2.4, outline the Duties of the Trustee.
[4] Plan Document, Section 5.7.
[5] Plan Document, Section 12.4.

Company.  Maine Oxy, Guerin and Gentry also knew or should have known about Paine's inadequate investigation and incomplete understanding of the value of the ESOP stock. Maine Oxy, Guerin and Gentry failed to ensure that the ESOP shares were valued at fair market value, by failing to provide the Trustee with necessary information in their possession; and thereby failed to ensure Paine fulfilled his fiduciary duties to the ESOP. Maine Oxy, Guerin and Gentry also facilitated Paine's fiduciary breaches, and otherwise failed to comply with their own fiduciary duties to act prudently and solely in the interests of the ESOP participants and beneficiaries.

38.  Guerin and Gentry knew or should have known that the NAV and CR Methodologies that AMC used, which yielded vastly different results, were inappropriate for appraising Maine Oxy. At a minimum, Guerin and Gentry knew that the Private Sale, which had occurred just three months prior to the "as of" date of the 2012 Valuation, and was therefore the most recent indication of Maine Oxy's value, implied the Company had an equity value of approximately $32 million.  They anticipated strong continued growth and were well-informed of the Company's established customer base, work and cash flow, and prospects for expansion.

39.  Maine Oxy, Guerin, Gentry and their fellow Directors had selected and could remove Paine as Trustee. Maine Oxy, Guerin and Gentry were obligated to monitor the activities of Paine, to remove him as Trustee if they knew, or should have known, that he was not acting in compliance with his fiduciary duties under ERISA, and to otherwise comply with their own ERISA fiduciary duties.

## VIOLATIONS

### FIRST CAUSE OF ACTION

### ERISA §§ 404(a)(1)(A), (B) and (D)

40.  The Secretary adopts and incorporates by reference the averments and allegations of Paragraphs 1 through 39, inclusive.

41.  In connection with the 2013 Stock Repurchase, Paine breached his fiduciary duties to act solely in the interest of the ESOP participants and beneficiaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), by, *inter alia*:

   a.  failing to perform an investigation of the Company's value in a good faith manner, including failing to question the underlying assumptions, conclusions, and valuation methods used by AMC, and failing to adequately review and question AMC's cursory acknowledgement and dismissal of the Private Sale and its impact on the valuation of Maine Oxy shares;

   b.  failing to address inconsistencies in the 2012 Valuation Report, including the use of the inappropriate NAV and CR valuation methodologies, despite conflicting indications within the 2012 Valuation Report (as set forth in ¶ 24, above);

   c.  relying on the 2012 Valuation, despite the fact that Paine knew or should have known that the information on which it relied was fundamentally

flawed and incomplete and presented without proper inquiry, and therefore such reliance was not reasonably justified under the circumstances;

d.  causing the ESOP to receive significantly less than fair market value for its stock and otherwise failing to obtain adequate consideration for the 24,500 shares the Company purchased from the ESOP participants;

e.  failing to gain an understanding of how the Private Sale could have affected the 2012 Valuation;

f.  failing to consider whether the 2012 Valuation reflected the fair market value of the shares at the times of the Special Diversification elections, distributions, and termination of the ESOP and, if appropriate to negotiate on behalf of the ESOP participants. The termination was the last opportunity for the ESOP participants to reap the benefits of the Company's growth which they had created over the past years.

42.   In connection with the 2013 Stock Repurchase, Paine violated his fiduciary duty to exercise his responsibilities solely in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with Title I of ERISA in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), by, *inter alia*, failing to ensure the Plan was valued at fair market value, in accordance with Sections 5.7 and 13.3, 15.1 of the Plan. Through such failure, Paine violated his fiduciary duty to ensure that the Plan received fair market value for its shares, and further failed in his duties of loyalty and prudence.

43. As a result of the foregoing imprudent and disloyal acts and omissions, Paine caused losses to the Plan for which he is jointly, severally and personally liable pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

44. Guerin, as Director and functional plan administrator, was a fiduciary to the ESOP. Guerin was responsible for selecting, monitoring and removing the Plan Trustee. By failing to monitor or remove Paine, Guerin participated in and contributed to Paine's breaches of his fiduciary duties. Further, by requiring AMC to enter into an NDA to conceal the price he had paid for Company shares mere months prior to terminating the ESOP, Guerin acted to purposefully withhold information from Trustee Paine, and promoted the Special Diversification option to ESOP participants while knowing that the price was below fair market value, and in doing so, breached his fiduciary duties of loyalty and prudence to the ESOP, in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

45. Maine Oxy, as Plan Administrator and Plan Sponsor, was responsible for selecting the Plan Trustee. As Plan Administrator and Plan Sponsor, Maine Oxy selected Paine as Trustee, and failed to monitor or remove Paine, and instead participated in and contributed to Paine's breaches of his fiduciary duties, in violation of the duties of loyalty and prudence to the ESOP pursuant to ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

46. Gentry, as a Director, who could remove Paine as Trustee, failed to monitor or remove Paine, and instead participated in and contributed to Paine's breaches of his fiduciary duties, by failing to disclose necessary information about the Private Sale and

ownership structure, in violation of his own duty of loyalty and prudence to the ESOP pursuant to ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

47.   As a result of these imprudent and disloyal acts and omissions, Maine Oxy, Guerin and Gentry caused losses to the Plan for which, they are jointly, severally and personally liable pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

48.   As co-fiduciaries to the ESOP, Maine Oxy, Guerin and Gentry are liable for the above described fiduciary breaches committed by their co-fiduciary, Paine, as well of each other's breaches of duty. Maine Oxy, Guerin and Gentry (a) participated knowingly in Paine's breaches of fiduciary duty; (b) withheld necessary information about the Private Sale from Paine pertinent to the valuation of the ESOP shares by failing to permit AMC to disclose information to him as Plan Trustee; (c) enabled Paine to commit breaches of his fiduciary duty by failing to monitor Paine in violation of ERISA 404(a)(1), 29 U.S.C. § 1104(a)(1) (as described above); (d) knew or should have known of Paine's breaches of fiduciary duty, but failed to make reasonable efforts under the circumstances to remedy those breaches; and (e) each knew that the others had withheld critical information from Paine. Accordingly, Maine Oxy, Guerin and Gentry are each jointly, severally and personally liable for the losses caused to the ESOP by Paine and each other pursuant to ERISA §§ 405(a)(1), (2) and (3), 502(a)(2) and (5), 29 U.S.C. §§ 1105(a)(1), (2), and (3), 1132(a)(2) and (5).

SECOND CAUSE OF ACTION

ERISA §§ 406(a)(1)(A) and (D) & 406(b)(1)

49.  The Secretary adopts and incorporates by reference the averments and allegations of Paragraphs 1 through 48.

50.   As a fiduciary to the ESOP, Paine was prohibited from causing the ESOP to engage in a transaction that constitutes the sale or exchange of property between the ESOP and a party in interest, and further was prohibited from causing the ESOP to engage in a transaction that constitutes the transfer to, or use by or for the benefit of a party in interest, of any assets of the ESOP. ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

51.   As set forth above, Maine Oxy, Guerin and Gentry were parties in interest within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

52.   By causing the ESOP to sell Maine Oxy stock in connection with the 2013 Stock Repurchase, Paine:

> a. caused the ESOP to engage in transactions that it knew or should have known constituted the direct or indirect sale or exchange, or leasing, of any property between the plan and parties in interest, in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A); and
>
> b. caused the ESOP to engage in transactions that it knew or should have known constituted direct or indirect transfers of the ESOP's assets to, or use of the ESOP's assets by or for the benefit of, parties in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

53. ERISA § 408(e), 29 U.S.C. § 1108(e), provides an exemption to the prohibited transaction provisions by allowing plans to purchase employer stock from parties in interest, as in an ESOP, so long as the price paid constitutes adequate consideration. Adequate consideration is defined in ERISA § 3(18), 29 U.S.C. § 1002(18) as the "fair market value of the asset as determined in good faith by the trustee or named

fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary [of Labor]."

54. Because the ESOP sold stock at a price far below "adequate consideration," and Paine failed to conduct a prudent and good faith investigation of the 2012 Valuation, its assumptions and conclusion, and the circumstances prevailing at the time, the conditions of the exemptions under ERISA § 408, 29 U.S.C. § 1108, including ERISA § 408(e), 29 U.S.C. § 1108(e), have not been met.

55. As set forth above, Maine Oxy, Guerin and Gentry caused the ESOP to engage in a prohibited transaction, in violation of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

56. As described above, Maine Oxy, Guerin and Gentry, as fiduciaries to the ESOP, caused the Company to repurchase the ESOP shares below market value to their benefit as the new 100% owners of the Company, thereby dealing with the assets of the Plan in their own interest or for their own account, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

57. As a result of the fiduciary breaches described above, Paine, Maine Oxy, Guerin, and Gentry caused the ESOP to suffer financial losses for which they are personally, jointly and severally liable pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

58. As co-fiduciaries to the Plan and knowing participants, Maine Oxy, Guerin and Gentry are liable for the above described fiduciary breaches committed by their co-fiduciary, Paine. Maine Oxy, Guerin and Gentry (a) participated knowingly in Paine's breaches of fiduciary duty; (b) enabled Paine to commit breaches of his fiduciary duty by failing to monitor Paine in violation of ERISA 404(a)(1), 29 U.S.C. § 1104(a)(1) (as

described above); (c) knew or should have known of Paine's breaches of fiduciary duty, but failed to make reasonable efforts under the circumstances to remedy those breaches, and (d) engaged in self-dealing by using the assets of the Plan for their own interest, in violation of 29 U.S.C. § 1106(b)(1). Accordingly, Maine Oxy, Guerin and Gentry are each jointly, severally and personally liable for the losses caused to the ESOP by Carl Paine pursuant to ERISA §§ 405(a)(1), (2) and (3), 502(a)(2) and (5), 29 U.S.C. §§ 1105(a)(1), (2), and (3), 1132(a)(2) and (5).

### PRAYER FOR RELIEF

WHEREFORE, the Secretary prays that this Court:

1.   Order Paine, Maine Oxy, Guerin, and Gentry to restore to the ESOP all losses incurred as a result of their fiduciary breaches, engagement in prohibited transactions and other violations for which they are liable, with appropriate lost earnings;

2.   Require Paine, Maine Oxy, Guerin and Gentry to unwind or otherwise correct the prohibited transaction, with appropriate lost earnings;

3.   Require Paine, Maine Oxy, Guerin, and Gentry to disgorge any and all ESOP assets obtained by them and to disgorge any and all profits earned by them because of their prohibited transactions;

4.   Enjoin Paine, Maine Oxy, Guerin and Gentry from engaging in any further violations of Title I of ERISA;

5.   Enjoin Paine, Guerin and Gentry from serving as a fiduciary, trustee or service provider to any ERISA-covered plan;

6.   Award the Secretary the costs of this action; and

7.   Provide such other relief as is just and equitable.

Respectfully submitted,

Kate O'Scannlain
Solicitor of Labor

Post Office Address:                        Maia S. Fisher
Office of the Solicitor                     Regional Solicitor
J.F.K. Federal Building
Room E-375                                  Marjorie A. Butler
Boston, MA  02203                           ERISA Counsel
Tel. (617) 565-2500
Fax (617) 565-2142                          _/s/ Donald E. d'Entremont_____
                                            Donald E. d'Entremont
                                            Senior Trial Attorney

                                            Niamh E. Doherty
                                            Trial Attorney

                                            United States Department of Labor
                                            Attorneys for the Plaintiff

Date: September 15, 2020