# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| MARTIN J. WALSH[1], Secretary of Labor <br><br> Plaintiff, <br><br> v. <br><br> MAINE OXY-ACETYLENE SUPPLY COMPANY, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Docket No. 2:20-cv-00326-NT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER ON DEFENDANT CARL PAINE'S MOTION TO DISMISS

Before me is Defendant Carl Paine's motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. ("**Def.'s Mot.**") (ECF No. 35). For the reasons stated below, the motion to dismiss is **DENIED**. Because I do not find it necessary to the disposition of this motion, the Secretary's request for oral argument is also **DENIED**.

## BACKGROUND[2]

This case concerns a dispute surrounding an employee stock ownership plan ("**ESOP**") at Defendant Maine Oxy-Acetylene Supply Company ("**Maine Oxy**" or the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of Labor Martin J. Walsh has been substituted for former Secretary of Labor Eugene Scalia as the plaintiff in this action.

[2] This factual background is drawn primarily from the allegations in the Complaint, which I take as true at this stage. *Justiniano v. Walker*, 986 F.3d 11, 19 (1st Cir. 2021). I also draw on facts from documents that are "expressly incorporated into," "sufficiently referred to," or "central to" the Complaint. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72, 74–75 (1st Cir. 2014).

"**company**"), a New England supplier of welding equipment and industrial and specialty gases. Compl. ¶¶ 2, 7 (ECF No. 1). In 2004, Maine Oxy established the ESOP to allow employees "to share in the growth and profits of Maine Oxy and to enable them to save and invest in accordance with the" ESOP. Compl. ¶ 6; Maine Oxy ESOP Document ("**ESOP Document**") § 1.2 (ECF No. 35-1). In March 2012, Defendant Carl Paine (the "**Defendant**") was appointed as the ESOP trustee, and at some point in 2012, he also became a member of the Maine Oxy Board of Directors ("**BOD**"). Compl. ¶¶ 13, 19.

In September 2012, Defendants Daniel Guerin and Bryan Gentry (the latter through a trust) purchased 25,500 shares of Maine Oxy—securing a fifty-one percent ownership interest in the company—for $654.62 per share (the "**Private Sale**"). Compl. ¶¶ 2, 18. Both were members of the company's BOD, while Mr. Guerin was also the President and Chief Executive Officer of the company. Compl. ¶¶ 9–10.

In early 2013, Maine Oxy was subject to its annual valuation conducted by Atlantic Management Company ("**Atlantic**"). Compl. ¶¶ 21, 23. At the time of this valuation, Atlantic was already aware of the Private Sale, but Mr. Guerin and Maine Oxy had required Atlantic to sign a non-disclosure agreement prohibiting it from disclosing the details. Compl. ¶¶ 2, 14–15, 17, 21–22.

Atlantic used two methodologies to value Maine Oxy, Compl. ¶ 23, the particulars of which are not relevant here. What is relevant, however, is that the Secretary of Labor (the "**Secretary**")—the plaintiff in this action—alleges that neither methodology was appropriate under the circumstances and that these two

methodologies produced vastly different results. Compl. ¶ 23. Atlantic did not seek to reconcile these results and merely took the average of the results of the two methodologies to determine the fair market value of Maine Oxy. Compl. ¶ 23.

On April 25, 2013, Atlantic sent a draft valuation report to Mr. Paine and to the company's Chief Financial Officer ("**CFO**") in which it valued Maine Oxy's ESOP share price at $134.92 per share. Compl. ¶ 24. On May 1, 2013, Atlantic sent the final valuation report (the "**Valuation**") to the CFO (but not to Mr. Paine), which contained the same share price as in the draft report. Compl. ¶ 24. The Valuation mentions the Private Sale and describes how "[p]rior sales of" Maine Oxy "common stock can be an excellent indicator of value if the transactions occurred relatively close to the valuation date and the prices paid for the shares were the result of arm's length negotiations." Valuation Analysis 14, 35 (ECF No. 35-2). But because the Private Sale was not an arm's length transaction, Atlantic concluded without elaboration that the private sale from September of 2012 was not a relevant factor in its analysis. Valuation Analysis 35.

On October 16, 2013, the BOD voted to terminate the ESOP effective November 1. Compl. ¶ 28. Maine Oxy then bought back the outstanding ESOP shares for $134.92 per share (the "**buyback**"), the price in the Valuation. Compl. ¶ 29.

On September 15, 2020, the Secretary sued to void this buyback, alleging that the Defendants breached their fiduciary obligations in allowing the buyback to proceed as it did. Mr. Paine is the only defendant who has moved to dismiss the Complaint. The Secretary alleges that Mr. Paine violated his fiduciary duties as

3

ESOP trustee and thereby violated § 404(a)(1)(A), (B), and D (29 U.S.C. § 1104(a)(1)(A), (B), (D)) (the "**First Cause of Action**") and § 406(a)(1)(A) and (D) (29 U.S.C. § 1106(a)(1)(A), (D)) (the "**Second Cause of Action**") of the Employee Retirement Income Security Act ("**ERISA**"). Compl. ¶¶ 40–43, 49–54.

## LEGAL STANDARD

"To withstand a Rule 12(b)(6) motion, a complaint must 'contain sufficient factual matter to state a claim to relief that is plausible on its face.'" *Ríos-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 24 (1st Cir. 2019) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). That "short and plain statement" need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted); *see Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (complaint need not contain "an exposition of [plaintiff's] legal argument," nor must it "pin plaintiff's claim for relief to a precise legal theory").

To determine whether a complaint states a claim, courts in the First Circuit follow a two-step analysis. First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Justiniano v. Walker*, 986 F.3d 11, 19 (1st Cir. 2021) (quoting *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020)). Then, taking all well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor, the court must determine whether the complaint "plausibly narrate[s] a claim for relief." *Id.* (quoting *Zell*, 957 F.3d at 7). "Plausible, of course, means something more than merely possible," and

4

the plausibility of a complaint is based on the context of the particular case, judicial experience, and common sense. *Id.* (quoting *Zell*, 957 F.3d at 7). Although a plaintiff need not establish a prima facie case of his or her claim at the pleading stage, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013).

On a motion to dismiss, courts "usually consider only the complaint, documents attached to it, and documents expressly incorporated into it." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014). But in some circumstances, a court may consider additional evidence, including documents where the authenticity is not disputed, "documents central to" the plaintiff's claim, or "documents sufficiently referred to in the complaint." *Id.* at 74 (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). If a court considers "matters outside the pleadings," the motion must be treated as one for summary judgment, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

## DISCUSSION

### I. Documents Outside the Pleadings

The Defendant attaches to his motion five exhibits. The Secretary agrees that three are properly considered at the motion to dismiss stage—the ESOP Document (Ex. A), the Valuation (Ex. B), and a tolling agreement (Ex. E)—because they are fairly encompassed by the Complaint. Sec'y of Labor's Opp'n to Def. Carl Paine's Mot.

5

to Dismiss ("**Pl.'s Opp'n**") 3 & n.4 (ECF No. 40). But the Secretary contends that the remaining two (Exhibits C and D) at least partially go beyond the bounds of the Complaint and are not properly considered. Pl's Opp'n 3–4. Exhibit C is an earlier Atlantic valuation of Maine Oxy from 2011, and the Secretary contends that because it is neither referenced in the Complaint nor is central to the Secretary's claims, it should be excluded. Pl.'s Opp'n 3.

As for Exhibit D, the Secretary contends that this exhibit is a collection of pages/documents. Pl.'s Opp'n 3. And while the Secretary does not take issue with five of these pages—an August 1, 2013, ESOP Distribution Policy Statement, and the Revised Second and Third Amendments to the ESOP—he objects to my consideration of three pages that purport to reflect the adoption of the amendments to the ESOP by "unanimous written consent" of the BOD. Pl.'s Opp'n 3–4 & n.5. The last of these three pages is distinct from the first two in that it contains a fax header that the first two pages lack.[3] Pl.'s Opp'n 4.

The Defendant contends that these disputed pages prove that he was not a member of the BOD at the time the ESOP was dissolved. Def. Carl Paine's Reply to Sec'y of Labor's Opp'n to Def. Carl Paine's Mot. to Dismiss ("**Def.'s Reply**") 7 (ECF No. 43). The Secretary challenges the authenticity of these three pages of Exhibit D and argues that they should be excluded. Pl.'s Opp'n 4. In reply, the Defendant offers

---

[3] That last page is also marked as page five of the original fax, Sec'y of Labor's Opp'n to Def. Carl Paine's Mot. to Dismiss 4 (ECF No. 40), but the Defendant does not appear to have submitted the first four pages of that fax.

no justification for the admission of these pages and instead asks for the motion to dismiss to be converted into a motion for summary judgment.[4] Def.'s Reply 7.

Exhibit C and the disputed pages of Exhibit D do not fall within any of the limited exceptions outlined in *Foley* and are not properly considered at the motion to dismiss stage. The Secretary's request to exclude Exhibit C and the disputed pages of Exhibit D is therefore **GRANTED**. As is explained in greater detail below, I also **DENY** the Defendant's request for limited discovery and conversion to a motion for summary judgment.

## II. The First Cause of Action (ERISA § 404)

Section 404(a)(1)(A) requires that an ESOP fiduciary act "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). Section 404(a)(1)(B) requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). Section 404(a)(1)(D) requires a fiduciary to act "in accordance with the documents and instruments governing the" ESOP, to the extent they are consistent with ERISA. *Id.* § 1104(a)(1)(D).

---

[4] The Defendant also requests that he be permitted to engage in limited discovery. Def. Carl Paine's Reply to Sec'y of Labor's Opp'n to Def. Carl Paine's Mot. to Dismiss 7 (ECF No. 43). Because I deny the request to convert the motion into a motion for summary judgment, I also reject this discovery request.

7

The Secretary alleges six breaches of Mr. Paine's fiduciary duties:

- Failing to perform a good faith investigation of Maine Oxy's value, including failing to review and question Atlantic's methods and conclusions;
- Failing to address inconsistencies in the Valuation;
- Relying on the Valuation, even though he knew or should have known that it was flawed and incomplete;
- Causing the ESOP to receive significantly less than fair market value in the buyback;
- Failing to assess how the Private Sale might have affected the Valuation; and
- Failing to consider whether the Valuation reflected the fair market value of the ESOP shares at the time of the buyback and, if appropriate, to negotiate on behalf of the ESOP participants.

Compl. ¶ 41.

The Defendant argues that the First Cause of Action is legally flawed because: (1) Mr. Paine's "acceptance" of the Valuation in May 2013 is outside the six-year statute of limitations and any breach associated with that acceptance is time barred, and (2) "the remaining allegations regarding the use of the 2012 Valuation in connection with the [buyback] are not based on fiduciary acts by Mr. Paine" and thus cannot serve as the basis for a breach of fiduciary duty claim. Def.'s Mot. 8.

The Secretary disputes the Defendant's premise that Mr. Paine's involvement with the Valuation was a singular event ending on May 1, 2013. Pl.'s Opp'n 12–18. The gravamen of the Secretary's opposition is that because Mr. Paine's alleged

fiduciary breaches are properly characterized as breaches by omission, the statute of limitations began to run on the last date on which he could have cured the alleged breach, which, the Secretary contends, was when the buyback was complete. Pl.'s Opp'n 17–18. That is, the Secretary argues that Mr. Paine was dutybound to investigate the validity of the Valuation and that that obligation continued until his duties as trustee ceased when the ESOP was dissolved. In reply, Mr. Paine contends that this breach by omission theory is not supported by the Secretary's allegations in the Complaint. Def.'s Reply 1–5.

ERISA fiduciary breaches under § 404 have a six-year statute of limitations, which runs from "the date of the last action which constituted a part of the breach or violation," or "in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113. Although the Complaint was not filed until September 15, 2020, the parties entered into a tolling agreement, such that the statute of limitations was tolled as of October 11, 2019. Tolling Agreement (ECF No. 35-5). Thus, to be timely, the First Cause of Action needed to accrue by October 11, 2013.

The Defendant argues that "the Secretary alleges that Mr. Paine breached his fiduciary duty by improperly accepting" the Valuation, "which was finalized on May 1, 2013." Def.'s Mot. 9 (citing Compl. ¶¶ 24, 41). This mischaracterizes the Complaint and improperly seeks to reframe the First Cause of Action. The Defendant treats the "acceptance" of the Valuation as a singular event, but there is no indication that it was. Nothing in the Complaint indicates that Mr. Paine—or anyone at Maine Oxy—

9

was supposed to do—or actually did—anything to "accept" the Valuation. In fact, although Mr. Paine references the May 1, 2013, date when Atlantic sent the Valuation to the CFO, the Complaint alleges that this Valuation was not even sent to Mr. Paine on that date. Compl. ¶ 24.

Although the Defendant claims that the Secretary has shifted his theory in response to Mr. Paine's motion to dismiss, the Complaint quite clearly alleges that Mr. Paine had continuing duties as the trustee of the ESOP and that he breached his duties by omission. Compl. ¶ 41(a) (failure to perform an investigation of Maine Oxy's value; failure to question Atlantic's assumptions, conclusions, and methods; and failure to adequately review and question Atlantic's dismissal of the Private Sale); ¶ 41(b) (failure to address inconsistencies in the Valuation); ¶ 41(e) (failure to gain an understanding of how the Private Sale might have affected the Valuation); ¶ 41(f) (failure to consider whether Valuation reflected fair market value).

The Complaint also clearly alleges that Mr. Paine had reason to question the Valuation and that he had a fiduciary duty to do so. Not only did that duty not end on May 1 when the Valuation was completed, but it might not have even been triggered until then. Mr. Paine almost certainly could not have challenged Atlantic's valuation before the draft was completed on April 25. It strains credulity to suggest that Mr. Paine had a mere six-day window to challenge Atlantic's valuation, forever losing his ability to do so once the report was finalized and sent out on May 1.

The argument that there was a limited window for review is further undercut by the ESOP document and the duties that it bestows on the ESOP trustee. Section

13.1 of the ESOP document says that the ESOP assets are "held in trust by the Trustee," and Mr. Paine's duties as trustee would have extended until the Trust was terminated, which would have been no sooner than November 1, 2013. Compl. ¶¶ 28–30; ESOP Document § 13.1.[5] That means that Mr. Paine's fiduciary duties continued until that date, which is within the tolled statute of limitations. And one of Mr. Paine's duties as trustee was the duty to ensure that the ESOP was accurately valued. *See* ESOP Document § 13.3 ("The assets of the Trust Fund shall be valued at their fair market value annually by the Trustee . . . ."); *Donovan v. Bierwirth*, 680 F.2d 263, 273–74 (2d Cir. 1982) (holding that trustees failed to fulfill fiduciary duty by failing to do a more thorough job in ascertaining the facts surrounding the financial condition of pension funds).

The Secretary alleges that there were multiple red flags in the Valuation that should have triggered greater scrutiny by Mr. Paine in his role as trustee. Those purported red flags would have continued to exist—and that scrutiny would have remained necessary—beyond May, when the Valuation was finalized by Atlantic, and through October 2013, when the Valuation was used to set the price of the shares for the buyback.

---

[5] The specific termination date of the trust is not clear. On October 16, 2013, the Maine Oxy-Acetylene Supply Company ("**Maine Oxy**") board of directors ("**BOD**") voted to terminate the employee stock ownership plan ("**ESOP**") effective November 1. And the ESOP document says that the trust "terminate[s] upon delivery to the Trustee of a notice . . . specifying the date as of which the Plan, or the Plan and the Trust, shall terminate." Maine Oxy ESOP Document § 14.3 (ECF No. 35-1). That date would have been November 1. On the other hand, the ESOP Trust Agreement says that if the ESOP is terminated, the trust does not terminate until all assets from the trust fund are distributed. Maine Oxy ESOP Trust Agreement § 8.2 (ECF No. 40-1). The Complaint alleges that "all ESOP assets were distributed by the end of December 2013." Compl. ¶ 30 (ECF No. 1). At bottom, these distinctions do not matter, since the trust need only have terminated after October 11 for the Complaint's First Cause of Action to be within the statute of limitations period.

Mr. Paine's second argument as to why the First Cause of Action should be dismissed fares no better. He contends that subsequent amendments to the ESOP, which provided that the ESOP would be terminated and which established that the Maine Oxy stock would be repurchased at fair market value as determined by the Valuation, were decisions made by the ESOP settlor and that he had "no role" in these decisions. Def.'s Mot. 9–12. While that may be true, it is not fatal to the First Cause of Action, because the Complaint is alleging not that Mr. Paine breached his duty by deciding to terminate the ESOP but that he breached his fiduciary duty of ensuring that the Plan was valued at fair market value. Compl. ¶ 35 ("While the decision to terminate the ESOP was a settlor function, Trustee Paine should have carried out his fiduciary duties to ensure the Plan was properly terminated and the shares were repurchased at fair market value.").

The Secretary has alleged sufficient factual matter to state a claim for relief that is plausible on its face that Mr. Paine violated his fiduciary duties under ERISA § 404, and therefore the Defendant's motion to dismiss the First Cause of Action is **DENIED**.

### III. The Second Cause of Action (ERISA § 406)

The Secretary also alleges that Mr. Paine has violated ERISA § 406(a)(1)(A) and (D) (29 U.S.C. § 1106(a)(1)(A), (D)), which prohibit (with limited exceptions) an ESOP fiduciary from "caus[ing] the plan to engage in" certain transactions between

the plan and an interested party (a "**prohibited transaction**").[6] The Secretary alleges that:

> By causing the ESOP to sell Maine Oxy stock in connection with the [buyback], Paine:
>
>> a. caused the ESOP to engage in transactions that it knew or should have known constituted the direct or indirect sale or exchange, or leasing, of any property between the plan and parties in interest, in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A); and
>>
>> b. caused the ESOP to engage in transactions that it knew or should have known constituted direct or indirect transfers of the ESOP's assets to, or use of the ESOP's assets by or for the benefit of, parties in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

Compl. ¶ 52.

Mr. Paine argues that the Second Cause of Action must be dismissed because he did not "cause" the buyback. He contends that the buyback was caused only by the BOD's termination of the ESOP and that he had no role in that decision. Def.'s Mot.

---

[6] The full text of § 1106(a)(1)(A) and (D) is as follows:

(a)   Transactions between plan and party in interest

Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

   (A) sale or exchange, or leasing, of any property between the plan and a party in interest; . . . [or]

   (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . .

Section 1108(e) grants an exemption for some sales where "adequate consideration" is paid. 29 U.S.C. § 1108(e)(1).

12–13. In response, the Secretary points to his allegation that Mr. Paine was a member of the BOD. Pl.'s Opp'n 24 (citing Compl. ¶ 8). Indeed, the Complaint, alleges that Mr. Paine was a member of the BOD "[a]t all relevant times," Compl. ¶ 8, and the Valuation lists six members of the BOD, including Mr. Paine, Valuation Analysis 13.[7] Mr. Paine tries to challenge these allegations by introducing additional evidence into the record, but, as I explained above, this evidence is not appropriately considered at the motion to dismiss stage, and I have excluded it.

At this stage of the proceedings, I must accept all of the facts alleged in the Complaint as true, and I must draw all reasonable inferences in favor of the Secretary. Accordingly, I accept as true that Mr. Paine was a member of the BOD at the time the BOD voted to authorize the buyback, and I infer that, in his capacity as a member of the BOD, Mr. Paine "caused," in some manner, the buyback to happen. This is sufficient to allege a violation of § 406.

The Defendant asks that I convert his motion to dismiss into a motion for summary judgment and allow limited discovery on the issue of whether Mr. Paine was actually on the BOD at the time the decisions were made to terminate the ESOP and repurchase the stock. However, in his opposition, the Secretary offers a second basis for how Mr. Paine allegedly "caused" the buyback. In addition to asserting that Mr. Paine caused the prohibited transaction because of his role as a member of the BOD, the Complaint alleges that Mr. Paine caused the prohibited transaction in his

---

[7] The 2012 valuation report says that Maine Oxy had five members of its BOD but then goes on to list six. Valuation Analysis 13 (ECF No. 35-2). I assume the reference to "five" members is a typographical error.

capacity as trustee because the buyback occurred at a price that was less than "adequate consideration" and that Mr. Paine "fail[ed] to conduct a prudent and good faith investigation of the 2012 Valuation." Pl.'s Opp'n 20–21, 23–24; Compl. ¶ 54. The Secretary contends that "[i]t was the failure to sell the shares for adequate consideration that caused the Plan to enter into a prohibited transaction, not the decision to terminate the Plan." Pl.'s Opp'n 25.

Mr. Paine appears to be arguing that he was not a cause in fact (i.e., a "but for" cause) of the prohibited transaction, while the Secretary responds with an argument as to why he contends Mr. Paine proximately caused the prohibited transaction. I recognize that Mr. Paine disputes the allegation that he was on the BOD at the time the buyback was authorized and that this dispute could likely be resolved with limited discovery. I deny this request because it seems to me that the Secretary's theory that Mr. Paine is liable as trustee under § 406 would benefit from further development, and the Secretary has made sufficient allegations to be entitled to progress to the next stage of this litigation.

While it is not completely clear to me at this point whether or how Mr. Paine's alleged failure to investigate the Valuation "caused" the ESOP to engage in a prohibited transaction—particularly in terms of "but for" causation—I can conceive of a situation where a failure by a fiduciary to assure an adequate valuation could set in motion the sale of shares by plan participants to interested parties at less than fair market value. Whether that would be sufficient to constitute causation under § 406 has not been adequately briefed by the parties, *see Pizzella v. Vinoskey*, 409 F. Supp.

15

3d 473, 520–21 (W.D. Va. 2019) (discussing proximate causation standard under §§ 404 and 406); *Lysengen ex rel. Morton Bldgs., Inc. Leverage Emp. Stock Ownership Plan v. Argent Tr. Co.*, 498 F. Supp. 3d 1011, 1021 (C.D. Ill. 2020) (allowing § 406 claim against ESOP trustee to survive motion to dismiss where plaintiff sufficiently alleged that ESOP participants paid more than fair market value); *cf. Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000) ("[Section] 406(a) imposes a duty only on the fiduciary that causes the plan to engage in the transaction.").

Because the Secretary's theory about Mr. Paine's liability under § 406 in his capacity as trustee would benefit from further factual development and more fulsome briefing, I deny the Defendant's request to convert his motion to one for summary judgment. The Defendant's motion to dismiss the Second Cause of Action is **DENIED**.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's motion to dismiss.

SO ORDERED.

/s/ Nancy Torresen<br>United States District Judge

Dated this 21st day of June, 2021.

16